# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| RICKY R. FRANKLIN | § |
| | § |
| v. | §     1-18-CV-00236-LY |
| | § |
| UPLAND SOFWARE, INC. | § |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:     THE HONORABLE LEE YEAKEL
          UNITED STATES DISTRICT JUDGE

Before the Court are Plaintiff's Motion for Summary Judgment (Dkt. No. 13), Defendant's Response (Dkt. No. 18), and Plaintiff's Reply (Dkt. No. 20); and Plaintiff's Motion to Dismiss Defendant's Counterclaims (Dkt. No. 15), Defendant's Response (Dkt. No. 17), and Plaintiff's Reply (Dkt. No. 19). The undersigned submits this Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules.

## I. GENERAL BACKGROUND

Plaintiff Ricky Franklin brings this suit against Upland Software company alleging that Upland Software committed violations of the Telephone Consumer Protection Act (TCPA). Franklin alleges that Upland violated the TCPA and Georgia Code, O.C.G.A. § 46-5-27(i), when it sent a number of unsolicited text messages to his phone. Upland responded by asserting counterclaims against Franklin, including fraud and fraud by non-disclosure. Franklin then filed both a motion for summary judgment seeking relief on his affirmative claims, and a motion to dismiss attacking Upland's counterclaims.

## II. LEGAL STANDARD

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). If

the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

Rule 12(b)(6) allows for dismissal of an action "for failure to state a claim upon which relief can be granted." While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations in order to avoid dismissal, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also, Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). A plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* The Supreme Court recently expounded on the *Twombly* standard, explaining that a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion to dismiss, the Court must construe the complaint liberally and accept all of the plaintiff's factual allegations in the complaint as true. *See In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2009). Finally, although this Court construes the briefs of *pro se* litigants liberally, a *pro se* litigant must still comply with the court rules of procedural and substantive law. *Bird v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981). *See also Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) ("whether the plaintiff is proceeding pro se or is represented by counsel, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.") (internal quotation marks and citations omitted), *cert. denied*, 537 U.S. 1200 (2003).

## III. ANALYSIS

**A.     Motion for Summary Judgment**

Upland argues that the summary judgment motion should be denied for several reasons, including the fact that Upland did not make or send the texts in question to Franklin because it merely provides software to customers who then "make" or "initiate" calls to consumers, its software does not use an "automatic telephone dialing system" (ATDS) as defined by the TCPA, Upland's software does not use a random number generator, and Upland's customers are only capable of contacting consumers' numbers that have been placed in the software with the consumers' consent.

Franklin appears to be a serial litigator under the TCPA. In one of these suits, filed in Illinois, he also attempted to sue a mobile marketing company that only provided content routing software to its customers and did not send text messages. *Franklin v. Express Text, LLC*, 2017 WL 6540044, at *2 (N.D. Ill. Aug. 2, 2017).[1] As noted, Upland contends that it too does not send text messages, but rather only provides the platform by which its customers are able to compile phone numbers and send text messages to only those who have consented to receive them. The TCPA provides that:

> It shall be unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice. . .to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States.

47 U.S.C. § 227(b)(1)(A). This prohibition includes sending text messages. *Blow v. Bijora, Inc*, 855 F.3d 793, 798 (7th Cir. 2017).

---

[1] *See also* the six cases cited in Upland's counterclaim, Dkt. No. 12 at ¶ 3.

Some courts have read the TCPA to strictly apply only to the entity making or initiating the call.[2] Other courts have expanded the liability to include both the entity making the calls and the company who hired and directed the entity to make or initiate the calls.[3] Upland argues that its particular situation does not fit within this latter line of cases because it merely provides a platform for others to make or send texts, and urges the Court to follow the reasoning of *Klein v. Commerce Energy, Inc.*, where the court refused to impose a "broad sweeping extension of liability" under the TCPA to any entity involved in the transaction because the statutory text did not impose such a liability and because the court was not persuaded that parties should be held liable "merely because they stand to benefit from a call." *Klein v. Commerce Energy, Inc.*, 256 F.Supp.3d 563, 578 n.7 (W.D. Pa. 2017). The Court agrees. First, Upland provided a detailed breakdown to the Court of how its cloud-based software platform works. (Dkt. No. 18, Exhibit 1). The platform generally allows a company to capture and store consent records of individuals who have "opted in" to receive text messages from that company. The process "to make" a call or send a text requires no involvement from Upland, but rather requires Upland's customer to log onto its platform and set up a mobile messaging campaign from a list of individuals who have opted into a messaging campaign. After setting up the lists, the customer drafts the content of the text message and then selects the date

---

[2] *See Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 771 (N.D. Ill. 2014); *Golan v. Veritas Entm't, LLC*, 2014 WL 2095310, at *4 (E.D. Mo. May 20, 2014).

[3] *See Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 879 (9th Cir. 2014) (allowing defendant to be held vicariously liable under the TCPA where there is an agency relationship); *Hartley-Culp v. Green Tree Servicing, LLC*, 52 F.Supp.3d 700, 703 (M.D. Pa. 2014) (TCPA can impose liability vicariously upon any entity on whose behalf a third party places a call); *Bridgeview Health Care Ctr. Ltd. v. Clark*, 2013 WL 1154206, at *4 (N.D. Ill. Mar. 19, 2013) (TCPA creates vicarious liability against entity when it sends unsolicited communications on another party's behalf); *Accounting Outsourcing, LLC v. Verizon Wireless Personal Communications*, 329 F.Supp.2d 789, 805-06 (M.D. La. 2004); *Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F.Supp.3d 765, 774 (N.D. Ill. 2014) (same).

5

and time the text message is to be sent, and, after reviewing the content of the message and time to be sent, sends or schedules the text to be sent. In addition, none of the platforms that Upland uses allow for automatic or predictive dialing. The platforms require significant human intervention and sorting on almost all aspects of the text messages and the platforms do not have the capacity to act as an auto dialer. In the Court's examination of the summary judgment evidence, it can find nothing to suggest that Upland initiated the text messages or that an ATDS was used. To the extent that Franklin relies on a theory of vicarious liability, he does not succeed in his motion. Here, as in *Franklin*, the plaintiff has not put forward any evidence to show that Upland has been an agent of the entity that sent the text messages, or vice-versa, and the Court couldn't find anything in the record that even remotely suggested it. And Franklin's reliance on an FCC ruling that gave the term ATDS a broad scope is misplaced, as the D.C. Circuit recently overturned this interpretation, finding it was "utterly unreasonable in the breath of its regulatory inclusion." *ACA In't v. FCC*, 855 F.3d 687, 699 (D.C. Cir. 2018).

Finally, Franklin brings a claim for violation of Georgia's No Call Law. The relevant portions of this statute state:

> Any person who has received more than one telephone solicitation within any 12 month period by or on behalf of the same person or entity in violation of subsection (c) or (g) of this Code section may either bring an action to enjoin such violation; bring an action to recover for actual monetary loss from such knowing violation or to receive up to $2,000.00 in damages for each such knowing violation, whichever is greater; or bring both such actions.

O.C.G.A. § 46-5-27(i).

> No person or entity shall make or cause to be made any telephone solicitation to the telephone line of any residential, mobile, or wireless subscriber in this state **who has given notice to the commission**, in accordance with regulations promulgated under subsection (d) of this Code section, **of such subscriber's objection to receiving telephone solicitations**.

6

§ 46-5-27(c) (emphasis added).

> Any person or entity who makes a telephone solicitation to the telephone line of any residential, mobile, or wireless subscriber in this state shall, at the beginning of such call, state clearly the identity of the person or entity initiating the call.

§ 46-5-27(g)(1).

> No person or entity who makes a telephone solicitation to the telephone line of a residential, mobile, or wireless subscriber in this state shall knowingly utilize any method to block or otherwise circumvent such subscriber's use of a caller identification service.

§ 46-5-27 (g)(2). Franklin does not submit any evidence that would even suggest there has been a violation of § 46-5-27(c). For example, he submits no evidence that he objected and gave notice to the commission of not wanting telephone solicitations. Furthermore, Franklin does not allege that Upland violated any portion of § 46-5-27(g), including evidence that Upland did not identify itself or attempted to circumvent a caller identification service. Notably, Franklin, in his motion for summary judgment, barely addresses the Georgia Law and provides no argument or case law suggesting that Upland is liable. Perhaps most importantly, Georgia's No Call Law explicitly defines "telephone solicitation" to mean "any *voice communication* over a telephone line for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." § 46-5-27(b)(3). Franklin's Complaint is based on unsolicited text messages, not voice communications. Hence, Franklin has failed to demonstrate that he is entitled to judgment as a matter of law as to his Georgia claim.

For the reason set forth above, the undersigned recommends that Franklin's motion for summary judgment be denied.

**B.     Motion to Dismiss Upland's Counterclaims**

Upland's answer includes a counterclaim, in which it sues Franklin for common law fraud and fraud by nondisclosure. In short, Upland alleges that Franklin solicited the very texts he now claims in this lawsuit were unsolicited. Franklin argues that Upland's counterclaims should be dismissed in their entirety because Upland can't prove what Franklin did to prompt Upland to contact him on his cell phone, because Upland introduced hearsay, and because the counterclaims are retaliation for Franklin bringing his lawsuit. The Court disagrees. Taking all of Upland's factual allegations as true, as the Court must under Rule 12(b)(6), Upland has pled enough factual content to allow the Court to draw the reasonable inference that Franklin is liable for the misconduct alleged.

With regard to the fraud by nondisclosure claim,[4] Upland alleges that Franklin had knowledge by November 2017 at the latest, that someone by the name of Benita Ross had opted in to receive the very text messages at issue at the phone number at issue. Upland alleges that Franklin knew this material fact and that Upland was ignorant of the facts and did not have an equal opportunity to discover the facts. Upland also alleges with specificity that Franklin had intimate knowledge of the TCPA, and therefore, had a duty to speak by opting out of the text messages and failed to do so to induce Upland's client to continue to send Franklin text messages. Upland alleges that it, and more importantly its third-party client, did indeed rely on the failure to disclose and continued to send text messages to the phone number at issue, as Upland took actions pursuant to its contractual obligations.

---

[4]Under Texas law, the elements of fraud by nondisclosure are: (1) the defendant failed to disclose facts to the plaintiff, (2) the defendant had a duty to disclose those facts, (3) the facts were material, (4) the defendant knew the plaintiff was ignorant of the facts and the plaintiff did not have an equal opportunity to discover the facts, (5) the defendant was deliberately silent when it had a duty to speak, (6) by failing to disclose the facts, the defendant intended to induce the plaintiff to take some action or refrain from acting, (7) the plaintiff relied on the defendant's nondisclosure, and (8) the plaintiff was injured as a result of acting without that knowledge. *Blankinship v. Brown*, 399 S.W.3d 303, 308 (Tex. App.–Dallas 2013).

Finally, Upland alleges that it was injured as a result of the nondisclosure and had to incur costs associated with what it views as a spurious and setup lawsuit. These allegations meet of Rule 12(b)(6) and state a claim for relief that is plausible on its face.

Upland also brings a common-law fraud claim.[5] Here too, Upland's counterclaim has pled sufficient facts to survive a motion to dismiss. Again, accepting Upland's factual allegations as true, Upland contends that Franklin knew prior to his demand letter and the filing of the present suit that Franklin or Ms. Ross had affirmatively given Upland or third parties consent to receive text messages from Upland's third party providers at the phone number at issue. Upland pleads that Franklin knew the representations he made to the contrary were false and he intended Upland to rely on Franklin's representation so that Upland would be required to fulfill its contractual obligations with third parties who would then send Franklin text messages that they believed had been requested by Franklin. Upland contends that it suffered an injury by having to spend both employee time and resources to fulfill its contractual obligations based on Franklin's representations. This is enough to state a claim to relief that is plausible on its face.

## IV. RECOMMENDATION

Based on the preceding discussion, the undersigned Magistrate Judge **RECOMMENDS** that the District Judge **DENY** Plaintiff's Motion for Summary Judgment (Dkt. No. 13) and **DENY** Plaintiff's Motion to Dismiss Defendant's Counterclaims (Dkt. No. 15).

---

[5]The elements of a common-law fraud claim are: (1) the defendant made a material misrepresentation; (2) the defendant knew the representation was false or made the representation recklessly without any knowledge of its truth; (3) the defendant made the representation with the intent that the other party would act on that representation or intended to induce the party's reliance on the representation: and (4) the plaintiff suffered an injury by actively and justifiably relying on that representation. *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 217 (Tex. 2011).

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

SIGNED this 1st day of February, 2019

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE